UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANK ROMANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22-cv-4169 |
| v. ) | |
| ) | Judge Marvin E. Aspen |
| ORANGE PELICAN, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

After filing this lawsuit against Defendant Orange Pelican, LLC ("Orange Pelican"), Plaintiff Frank Romans now moves for prejudgment attachment of Orange Pelican's assets. (Motion for Pre-Judgment Attachment Under Federal Rule of Civil Procedure 64 ("Attachment Motion") (Dkt. No. 6).)[1] Orange Pelican, in turn, moves to dismiss Romans's Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Defendant Orange Pelican, LLC's Motion to Dismiss for Lack of Personal Jurisdiction ("Jurisdiction Motion") (Dkt. No. 13).) For the reasons set forth below, we deny the Jurisdiction Motion and grant the Attachment Motion.

**BACKGROUND**

In January 2021, Romans, an Illinois resident, learned that Dr. Arvind Ahuja, a Wisconsin resident, organized events to administer COVID-19 vaccines at a medical office in Wisconsin. (Declaration of Arvind Ahuja, M.D. ("Ahuja Dec.") (Dkt. No. 15) ¶¶ 1, 5; Declaration of Frank Romans ("Romans Dec.") (Dkt. No. 19-1) ¶¶ 1, 3–4.) Romans thereafter

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

1

traveled to Dr. Ahuja's practice in Wisconsin to receive his first dose of the vaccine. (Romans Dec. ¶ 5.)

After the visit, Dr. Ahuja sent Romans an e-mail asking him to invest "$2–3 million" in a venture to purchase medical-grade gloves from abroad and sell them domestically for a profit. (Exhibit 1 to Romans Dec. (Dkt. No. 19-1) at 7.) Dr. Ahuja "personally guarantee[d] 15% per year" on Romans's investment. (*Id.*) A few weeks later, Dr. Ahuja e-mailed Romans a marketing brochure for the gloves he planned to purchase from Vietnam. (Romans Dec. ¶ 6; Exhibit 2 to Romans Dec. (Dkt. No. 19-1) at 10–39.) Romans responded by requesting to see the gloves, and Dr. Ahuja offered to send him samples and reiterated that he "can guarantee 15% return for you." (Exhibit 3 to Romans Dec. (Dkt. No. 19-1) at 41.) Dr. Ahuja did not send Romans samples. (Romans Dec. ¶ 7.)

Romans and Dr. Ahuja eventually finalized a loan agreement, memorialized in a Promissory Note dated April 7, 2021 (the "April Note"), under which Romans would lend Dr. Ahuja's Wisconsin business entity, Orange Pelican, $2,000,000 at 15% annual interest. (Romans Dec. ¶ 8; Exhibit 4 to Romans Dec. ("April Note") (Dkt. No. 19-1) at 43; Ahuja Dec. ¶ 2.) The April Note provided that Wisconsin law would govern. (April Note at 44.) Dr. Ahuja signed the April Note in Wisconsin in his capacity as Orange Pelican's sole member. (Ahuja Dec. ¶ 6.) Dr. Ahuja e-mailed Romans "instructions for wiring to Orange Pelican" via CIBC Bank USA at an address in Chicago. (Exhibit 5 to Romans Dec. (Dkt. No. 19-1) at 47–48.) Romans wired $2,000,000 to that account. (Romans Dec. ¶ 10.) Romans's bank account also had a wiring address in Illinois. (Romans Dec. ¶ 13; Exhibit 8 to Romans Dec. (Dkt. No. 19-1) at 55.)

Dr. Ahuja then solicited another $1,500,000 loan from Romans by e-mail. This loan was memorialized as a Promissory Note dated May 25, 2021 (the "May Note"), which called for 20%

2

annual interest. (Romans Dec. ¶¶ 11–12; Exhibit 6 to Romans Dec. (Dkt. No. 19-1) at 50; Exhibit 9 to Romans Dec. ("May Note") (Dkt. No. 19-1) at 57–59.) Dr. Ahuja signed the May Note in Wisconsin on behalf of Orange Pelican. (Ahuja Dec. ¶ 6.) Romans wired money to Orange Pelican's bank account at CIBC USA with an Illinois address. (Romans Dec. ¶ 15.)

Both the April Note and May Note provided for quarterly interest payments. (April Note at 43; May Note at 57.) Romans e-mailed Dr. Ahuja instructions to wire those payments to Romans's bank account in Illinois. (Romans Dec. ¶ 13; Exhibit 8 to Romans Dec. (Dkt. No. 19-1) at 55.) Orange Pelican made seven payments to Romans's account in Illinois. (Romans Dec. ¶ 16.) At least once, payment was made after Dr. Ahuja directed CIBC to wire funds to Romans's account in Illinois. (Exhibit 10 to Romans Dec. (Dkt. No. 19-1) at 61.)

Romans now alleges that although he performed all his obligations under the April and May Notes, Orange Pelican failed to make all payments under the April and May Notes by their maturity dates. (Verified Complaint ("Compl.") (Dkt. No. 1) ¶¶ 9–28.) In an affidavit, he asserts that Orange Pelican owed Romans $3,770,000 as of August 9, 2022, with $833.33 in interest accruing daily. (Affidavit of Frank Romans ("Romans Aff.") (Dkt. No. 6-1) ¶ 6.)

**LEGAL STANDARD**

Under Rule 12(b)(2), a party can move to dismiss a case against it based on lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A complaint need not include facts alleging personal jurisdiction, but when a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over the defendant. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether personal jurisdiction exists, we accept all well-pleaded allegations in the complaint as true. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). We may also consider affidavits or other evidence in opposition to or in

3

support of our exercise of personal jurisdiction. *Purdue Rsch.*, 338 F.3d at 783. "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* We resolve factual disputes in the plaintiff's favor, but accept unrefuted assertions by the defendant as true. *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Under Federal Rule of Civil Procedure 64, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," unless a federal statute applies. Fed. R. Civ. P. 64(a). The Illinois prejudgment attachment remedy under 735 Ill. Comp. Stat. 5/4-101 permits "a creditor having a money claim," including those "sounding in contract," to "have an attachment against the property of his or her debtor . . . either at the time of commencement of the action or thereafter, when the claim exceeds $20" if any of eleven circumstances apply, including "[w]here the debtor is not a resident of [Illinois]." 735 Ill. Comp. Stat. 5/4-101(1). The plaintiff must also demonstrate a "probability" of success on the merits. 735 Ill. Comp. Stat. 5/4-137; *U.S. Bank Nat'l Ass'n v. Rose*, 2014 IL App (3d) 130356, ¶ 13. "If the factual findings establish both cause and a probability of success, the court retains no discretion to deny attachment—the court 'shall' enter the order." *Rose*, 2014 IL App (3d) 130356, ¶ 16.

## ANALYSIS

**I.     Orange Pelican's Motion to Dismiss for Lack of Personal Jurisdiction**

In response to Romans's motion for prejudgment attachment, Orange Pelican observes that we cannot award any relief if we lack jurisdiction. (Defendant's Brief Opposing Plaintiff's Motion for Pre-Judgment Attachment ("Attachment Opp.") (Dkt. No. 17) at 1.) We agree. *See*

4

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (noting that federal courts are "powerless to proceed to an adjudication" without personal jurisdiction). We therefore begin our analysis with Orange Pelican's motion to dismiss.

Orange Pelican argues that as a Wisconsin entity whose agent never left Wisconsin throughout his dealings with Romans, it did not establish sufficient minimum contacts with Illinois to support either general or specific jurisdiction. (Brief of Defendant Orange Pelican, LLC in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction ("Jurisdiction Memo") (Dkt. No. 14) at 1–6.) In response, Romans does not claim that we have general jurisdiction over Orange Pelican, but he argues that Dr. Ahuja's e-mails to Illinois, the terms of the April and May Notes, and Orange Pelican's Illinois bank account are sufficient contacts to establish specific jurisdiction. (Plaintiff's Opposition to Defendant's Rule 12(b)(2) Motion to Dismiss ("Jurisdiction Opp.") (Dkt. No. 19) at 5 n.1, 5–11.) Orange Pelican replies that neither e-mails to Illinois nor holding an account with a bank with regional headquarters in Illinois suffice. (Defendant Orange Pelican, LLC's Reply Brief in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction ("Jurisdiction Reply") (Dkt. No. 20) at 1–9.)

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue Rsch.*, 338 F.3d at 779; *see* Fed. R. Civ. P. 4(k)(1)(A). Illinois's long-arm statute extends the personal jurisdiction of its courts to out-of-state defendants on any basis "permitted by the Illinois Constitution and the Constitution of the United States." 725 Ill. Comp. Stat. 5/2-209(c). Therefore, if personal jurisdiction is constitutional, an Illinois court may exercise jurisdiction under its long-arm statute. *N. Grain Mktg.*, 743 F.3d at 492 (observing that "the statutory question merges with the constitutional one" in Illinois).

The Due Process Clause of the Fourteenth Amendment sets the federal bounds of personal jurisdiction in a diversity suit. U.S. Const., amend. XIV, § 1; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985); *N. Grain Mktg.*, 743 F.3d at 492. Under the federal constitution, "[a] forum state's courts may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has 'certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *N. Grain Mktg.*, 743 F.3d at 492 (quoting *Int'l Shoe Co. v. Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted)). Under the Illinois constitution, personal jurisdiction may be asserted where "it is fair, just, and reasonable . . . considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)). Because there is "no operative difference between the constitutional limits of the Illinois Constitution and the United States Constitution in terms of subjecting a defendant to personal jurisdiction," *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (cleaned up), we apply the federal standard for both the federal and state constitutions.

The Fourteenth Amendment's due process clause permits the exercise of personal jurisdiction wherever the defendant has "continuous and systematic contacts" (general jurisdiction) or in a forum where the defendant's contacts "directly relate to the challenged conduct or transaction" (specific jurisdiction). *Tamburo v. Dworkin*, 601 F.3d 693, 701–02 (7th Cir. 2010). Romans does not claim that we do have general jurisdiction over Orange Pelican. (Jurisdiction Opp. at 5 n.1.) We therefore consider only specific jurisdiction.

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King*, 471 U.S. at 472). "The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause." *Id.* (citing *Int'l Shoe Co.*, 326 U.S. at 316). These requirements keep individuals from being called to defend against suits in jurisdictions resulting from purely "random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475. Specific jurisdiction may be appropriate where a defendant "has deliberately engaged in significant activities within the forum state" or "created continuing obligations between itself and a resident of the forum." *Purdue Rsch.*, 338 F.3d at 780–81.

For cases arising out of contract disputes, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Id.* at 781 (citing *Burger King*, 471 U.S. at 478). Instead, we must take a "highly realistic" view of the contract in context of the entire transaction between the parties. *Id.* (quoting *Burger King*, 471 U.S. at 479). We therefore evaluate the contract's "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant's actions constitute purposeful minimum contacts with the forum state. *Burger King*, 471 U.S. at 479. Courts in this district often look to several factors "including (1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present in Illinois in connection with the contract; (4) whether the

7

Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois." *Tata Int'l Metals, (Ams.) Ltd. v. Kurt Orban Partners, LLC*, 482 F. Supp. 3d 737, 746 (N.D. Ill. 2020).

In this case, Orange Pelican purposefully availed itself of the privilege of conducting business activities in Illinois. Orange Pelican negotiated the April and May Notes electronically from Wisconsin and executed them in Wisconsin, but the Notes were to be performed in Illinois. Romans performed by lending money, and Orange Pelican performed by making interest payments. (April Note at 43–44; May Note at 57–58.) Orange Pelican directed Romans to perform his obligations under the Notes by disbursing funds to Orange Pelican's bank account at an Illinois address (Exhibit 5 to Romans Dec. at 47–48), and Orange Pelican performed its obligations under the Notes by wiring money from its Illinois account to Romans's Illinois account. (Exhibit 9 to Romans Dec. at 55; Exhibit 10 to Romans Dec. at 61) Similarly, although Orange Pelican is based in Wisconsin and its agent Dr. Ahuja never traveled to Illinois, Dr. Ahuja initiated the transaction by e-mailing someone he knew to reside in Illinois and proposing the preliminary terms of what was eventually memorialized in the Notes: "15% per year" on investments of "$2–3 million" (the April Note) and "[$]1.5 to 2 m[illion]" (the May Note). (Ex. 1 to Romans Dec. at 7; Ex. 6 to Romans Dec. at 50.) Orange Pelican's purposeful decision to initiate a transaction to borrow money from an Illinois resident supports our exercise of jurisdiction. *Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1202 (7th Cir. 1985) (considering which party initiated the transaction); *Tata Int'l Metals*, 482 F. Supp. 3d at 746 (finding evidence that defendant initiated transaction through correspondence to Illinois to support jurisdiction). Contrary to Orange Pelican's implication that was fortuitous and unforeseeable that "the plaintiff chose to open his computer" in Illinois (*see* Jurisdiction Reply at

8

4), Dr. Ahuja knew that Romans lived and banked in Illinois and chose to reach out to him for money. (Romans Dec. ¶ 4; April Note at 43 (noting Romans's Illinois address); May Note at 57 (same); Ex. 8 to Romans Dec. at 55 (noting Romans's bank address in Westmont, Illinois and listing Romans's cell phone number with an Illinois area code).)

We find that these contacts are sufficient to support the exercise of jurisdiction and that this action arises out of those contacts. Romans accuses Orange Pelican of failing to send enough money from its Illinois bank account to Romans's Illinois bank account as required under the April and May Notes, which Dr. Ahuja solicited and negotiated through correspondence he sent into Illinois. These facts are sufficient, even though Dr. Ahuja never physically entered Illinois to negotiate the Notes. *See, e.g.*, *Citadel Grp.*, 536 F.3d at 764 (finding specific jurisdiction where out-of-state defendant negotiated contract without ever entering Illinois); *Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, __ (7th Cir. 1990) (same); *see also Madison Consulting*, 752 F.2d at 1203–04 (declining "to create a rule that would require a defendant to step across state lines as a predicate for personal jurisdiction").

Orange Pelican argues that these contacts cannot count in our analysis, positing that "[t]elephone calls and emails into and out of the forum state to negotiate an agreement do not satisfy the minimum contacts rule." (Jurisdiction Memo at 5.) But there is no such bright-line rule in the Seventh Circuit. Rather, "[s]pecific jurisdiction is 'case-linked,'" *Tata Int'l Metals*, 482 F. Supp. 3d at 745 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017)) and we consider "the occurrence of telephone calls or other communications to and from Illinois" as one of many factors. *Id.* at 746. Moreover, contacts that are "individually insignificant" may become "collectively important." *Citadel Grp.*, 536 F.3d at 761.

9

Orange Pelican cites some cases where telephone calls and e-mails happened to be insufficient to establish specific jurisdiction. *Clover Techs. Grp., LLC v. Oxford Aviation, Inc.*, 993 F. Supp. 2d 872, 874–75 (N.D. Ill. 2013) (phone calls to Illinois to arrange airplane refurbishment in Maine was insufficient to confer specific jurisdiction over claims that arose out of the refurbishment); *GMAC Real Est., LLC v. E.L. Cutler & Assocs., Inc.*, 472 F. Supp. 2d 960, 965–66 (N.D. Ill. 2006) (contract with New Jersey plaintiff that moved to Illinois plus continued correspondence after plaintiff relocated to Illinois insufficient); *Heller Fin., Inc. v. Ohio Sav. Bank*, 158 F. Supp. 2d 825, 829 (N.D. Ill. 2001) (telephonic correspondence with Illinois plaintiff over contract with performance in Florida insufficient). But all those cases are distinguishable because they contemplated performance exclusively outside of Illinois. Unlike *Clover Technologies* (airplane repair in Maine), *GMAC Real Estate* (operating a franchise in Ohio), and *Heller Financial* (sending notice of an impending default in Florida), the contracts at issue in this case contemplated at least some performance within Illinois.

Moreover, in many other cases, telephone calls and e-mails into Illinois were among the contacts that sufficed to support specific jurisdiction in a breach of contract action, even though the out-of-state defendant never physically entered Illinois. *Heritage House*, 906 F.2d at 283 (finding jurisdiction where out-of-state defendant never entered forum state but "created a relationship which is naturally based on telephone and mail contacts rather than physical presence"); *Triad Cap. Mgmt., LLC v. Priv. Equity Cap. Corp.*, No. 07 C 3641, 2008 WL 4104357, at *5 (N.D. Ill. Aug. 25, 2008) ("[E]ven when contact takes place only via telephone or email, it can create a substantial connection between the defendant and the forum state."); *Arnold v. Goldstar Fin. Sys., Inc.*, No. 01 C 7694, 2002 WL 1941546, at *4 (N.D. Ill. Aug. 22, 2002) (finding specific jurisdiction where nonresident defendant "called [plaintiff] at least once in

10

Illinois, sent her a fax in Illinois, and entered into a long-term contractual relationship with an Illinois resident obligating itself to withdraw funds monthly from an Illinois checking account").

A prime example is *Citadel Group*, in which Washington, an Arkansas-based nonprofit corporation, planned to construct a medical facility in Arkansas and sent a request for proposal to developers across the country. 536 F.3d at 759. Eventually, Washington hired Citadel, an Illinois-based company, without ever physically traveling to Illinois, though Citadel representatives traveled to Arkansas once. *Id.* Under the parties' contract, Citadel would perform "project development" and organize special financing for Washington. *Id.* Citadel sent Washington a project calendar outlining the steps it would take, many of them in Illinois, and engaged in many phone calls and e-mail conversations throughout the life of the project—all without physically crossing state lines. *Id.* at 759–60. When the project collapsed and Citadel sued Washington in Illinois, the district court found no specific jurisdiction, but the Seventh Circuit reversed. *Id.* at 763. The Seventh Circuit explained that Washington "should have reasonably anticipated being haled into court in Illinois." *Id.* at 764. Rejecting Washington's argument that the contract was focused on Arkansas, the court explained, "while the end result would have been construction of a building in Arkansas, the authorization was not for Citadel to begin construction. The authorization encompassed *only* project development, which consisted entirely of administrative services carried out (for the most part) in Illinois." *Id.* at 764.

This case is more like *Citadel*, *Heritage House*, and *Triad Capital* than those cited by Orange Pelican, such as *Clover Technologies*, *GMAC Real Estate*, and *Heller Financial*. Here, as in *Citadel*, Orange Pelican engaged with an Illinois-based plaintiff for performance that took place in Illinois. In this case, as in *Citadel*, Orange Pelican reached into Illinois to solicit a loan from an Illinoisan to be disbursed to Orange Pelican's Illinois bank account and to be repaid

11

back to an Illinois bank account. And just as in *Citadel*, Orange Pelican purposefully availed itself of Illinois even though its agent never physically entered Illinois and Orange Pelican's ultimate goal was to accomplish some task outside of Illinois.

Orange Pelican also argues that its bank account was not based in Illinois, but rather it maintained an account at a Wisconsin branch of a Canadian bank that used boilerplate wiring instructions to its regional headquarters, which happened to be in Illinois. (Jurisdiction Reply at 5–7.) But Orange Pelican submits no evidence in support of these assertions, relying instead on the arguments of counsel in its Reply. Romans, on the other hand, submitted competent evidence that Orange Pelican instructed Romans to perform under the Notes by wiring money to an account with an Illinois address. (Exhibit 5 to Romans Dec. at 47–48.) Because we resolve factual disputes in the plaintiff's favor, *Purdue Research*, 338 F.3d at 782, we cannot give Orange Pelican's arguments more weight than Romans's evidence. Moreover, the location of Orange Pelican's bank accounts is only one of several factors supporting the exercise of jurisdiction.

We further find that it comports with fair play and substantial justice to exercise jurisdiction over Orange Pelican. *Id.* at 781. For this analysis, we consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *Burger King*, 471 U.S. at 477). Litigating in Illinois will pose minimal burden on Orange Pelican, whose headquarters in Franklin, Wisconsin, are not far from our courthouse in Chicago. (Ahuja Dec. ¶ 2); *Curtis v. Wheaton Franciscan Servs., Inc.*, No. 16 C 4232, 2016 WL 6432579, at *5 (N.D. Ill. Oct. 31,

2016) ("Franklin, Wisconsin . . . is roughly . . . 80 miles from Chicago . . . ."). Orange Pelican's sole member is close enough to Illinois that he treats Illinois patients. (Exhibit 11 to Romans Dec. (Dkt. No. 19-1) at 72 (noting that Dr. Ahuja has patients in northern Illinois).) Illinois has an interest in the litigation: Romans resides and executed the Notes here. Moreover, the April and May Notes provide that we will apply Wisconsin law, causing no conflict of interest between Illinois and Wisconsin. These factors demonstrate that exercising jurisdiction over Orange Pelican is appropriate.

## II.     Romans's Motion for Prejudgment Attachment

With our jurisdiction secure, we now consider Romans's motion for prejudgment attachment of Orange Pelican's assets under Federal Rule of Procedure 64. Romans asserts that he has met the conditions for attachment, including evidence of "cause," in this case, that Orange Pelican resides outside Illinois; an appropriate affidavit; and a probability of success on the merits. (Attachment Motion at 3–6.) Orange Pelican responds that (1) we cannot award any preliminary relief because we lack jurisdiction over it,[2] and (2) the Notes' choice of Wisconsin law precludes prejudgment attachment under Illinois law. (Attachment Opp. at 1–4.) Orange Pelican does not otherwise dispute that Romans would be entitled to prejudgment attachment of Orange Pelican's assets under Illinois law. (*Id.*) As explained above, we have jurisdiction over Orange Pelican, so we need only address Orange Pelican's choice-of-law argument.

---

[2] In connection with this argument, Orange Pelican proposes that we construe the motion as a request for a preliminary injunction under Rule 65, rather than prejudgment seizure of persons or property under Rule 64. We agree with Romans that Rule 64, which explicitly governs "attachment," applies. Fed. R. Civ. P. 64(b); *Grupo Mexicano de Desarrollo, S.A. v. Alliance Band Fund, Inc.*, 527 U.S. 308, 330–31 (1999) (holding that Rule 64, not Rule 65, governs prejudgment attachment remedies). In any event, for purposes of the arguments Orange Pelican raises—personal jurisdiction and choice of law—the distinction is immaterial.

Under Federal Rule of Civil Procedure 64, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," unless a federal statute applies. Fed. R. Civ. P. 64(a). Our court is located in Illinois, meaning we would apply remedies available under Illinois law, and neither party has suggested that a federal statute applies.

Orange Pelican argues, however, that the Illinois prejudgment attachment statute does not apply because both the April and May Notes provide that "[t]his Promissory Note shall be construed in accordance with and governed by the laws of the State of Wisconsin." (April Note at 44; May Note at 58.) Orange Pelican asserts—and Romans does not dispute—that under those provisions, Wisconsin law governs the Notes' interpretation. (Attachment Opp. at 3; Attachment Motion at 3 (applying Wisconsin law to show the elements required for success on the merits of breach of contract claim).) But that does not end the inquiry. Orange Pelican must also demonstrate that an Illinois procedural law is inapplicable merely because Wisconsin substantive law governs the interpretation of the Notes. For this, Orange Pelican argues without citation or analysis that "[n]othing in any of the case law suggests that there should be a different result for remedies—such as pre-judgment attachment—than for the substantive claims on which they rest." (*Id.*) Romans replies with several persuasive authorities that squarely refute Orange Pelican's assertion. *UPS Cap. Corp. v. Carpartsdepot, Inc.*, No. CV 14-7767 SS, 2014 WL 12768450, at *3 (C.D. Cal. Dec. 19, 2014) (applying forum-state law to pre-judgment remedies even though contract contained choice-of-law provision selecting another state); *see also, e.g.*, *Select Ins. Co. v. Excalibur Reins. Corp.*, No. 15 C 715, 2016 WL 916338, at *4 (D. Conn. Mar. 10, 2016) (same); *Admiral Charters, Inc. v. Son Yacht Charters, Inc.*, No. 99-54-P-H, 1999 WL

14

33117125, at *11 (D. Me. June 8, 1999) (same). Indeed, to our knowledge, precisely the opposite of Orange Pelican's assertion is true: every court to have considered the issue agrees with the cases cited in Romans's brief. *See, e.g.*, *Farm Credit Leasing Servs. Corp. v. Mullin*, No. CV 18-71-BLG-DWM, 2018 WL 4259874, at *2 (D. Mont. July 2, 2018).

We agree with the persuasive and unanimous authorities Romans cites and hold that under Rule 64, we apply the prejudgment remedies of "the state where the court is located," not the state of the contract's choice-of-law provision. Sitting in diversity, we apply state substantive law and federal procedural law. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014). Federal Rule of Civil Procedure 64 is a procedural rule that governs how we superintend this litigation pending the ultimate resolution of the questions of Wisconsin law at issue here. And Rule 64 provides that throughout this litigation, "every remedy is available that, under the law of *the state where the court is located*," including "attachment." Fed. R. Civ. P. 64(a), (b) (emphasis added). Rule 64 provides only one exception to the general rule that the forum-state law applies: "a federal statute governs to the extent it applies," which is inapplicable here. Fed. R. Civ. P. 64(a). Thus, because the prejudgment procedure of attachment is "available" in Illinois, 735 Ill. Comp. Stat. 5/4-101, it is likewise available here even though the Notes are governed by another state's substantive law.

We further find that Romans has demonstrated his entitlement to prejudgment attachment under Illinois law, which Orange Pelican does not dispute. Under 735 Ill. Comp. Stat. 5/4-101, "a creditor having a money claim," including one "sounding in contract," may "have an attachment against the property of his or her debtor . . . either at the time of commencement of the action or thereafter, when the claim exceeds $20" if any of eleven circumstances apply, including "[w]here the debtor is not a resident of [Illinois]." 735 Ill. Comp. Stat. 5/4-101(1).

Romans has established, and Orange Pelican does not dispute, that Romans has a claim "sounding in contract," "the claim exceeds $20," and "the debtor is not a resident of [Illinois]." (Compl. Romans must also demonstrate a probability of success on the merits. 735 Ill. Comp. Stat. 5/4-137; *Rose*, 2014 IL App (3d) 130356, ¶ 13. "If the factual findings establish both cause and a probability of success, the court retains no discretion to deny attachment—the court 'shall' enter the order." *Rose*, 2014 IL App (3d) 130356, ¶ 16.and Romans is likely to succeed on his breach-of-contract claims under Wisconsin law. (Attachment Motion at 3–7; Romans Aff. ¶¶ 2–7 (establishing existence of valid contracts, performance by Romans, breach by Orange Pelican, and damages); Exhibit 3 to Romans Aff. (Dkt. No. 6-1) (showing Romans's demand for Orange Pelican's performance and Orange Pelican's refusal); *see generally* Attachment Opp. (not disputing Romans's entitlement to attachment under Illinois law).)

## CONCLUSION

For the reasons set forth above, we grant Plaintiff's Motion for Pre-Judgment Attachment Under Federal Rule of Civil Procedure 64 (Dkt. No. 6) and deny Defendant Orange Pelican, LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 13). Romans shall submit a proposed order of attachment to Proposed_Order_Aspen@ilnd.uscourts.gov within five days. Orange Pelican shall respond to the Complaint by December 9, 2022. The status hearing set for November 17, 2022, is stricken and reset to February 16, 2023, at 10:30 a.m. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: November 10, 2022