UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Frank Romans,

    *Plaintiff,*

v.

Orange Pelican, LLC,

    *Defendant.*

No. 22 CV 4169

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Plaintiff Frank Romans loaned $3.5 million to Defendant Orange Pelican, LLC. Orange Pelican did not repay Romans in full, and he sued to enforce the contract. Orange Pelican raised several defenses, but only frustration of purpose survived the pleading stage. *Romans v. Orange Pelican, LLC*, 2023 WL 2933050, at *1 (N.D. Ill. Apr. 13, 2023). Romans now moves for summary judgment, arguing that the evidence is insufficient as a matter of law to support Orange Pelican's defense. [Dkt. 56.] For the reasons stated below, the Court agrees and grants Romans's motion.

I.    **Background**

The Court draws on the parties' Local Rule 56.1 statements to present the relevant facts, which are undisputed except where indicated. Orange Pelican is owned and operated by its sole member, Dr. Arvind Ahuja. [Dkt. 59 ¶ 3.] In early 2021, Dr. Ahuja told Romans that he intended to purchase medical-grade gloves and was looking for investments of $2–3 million; Romans expressed interest in investing. [Dkt. 62 ¶¶ 1–2; *see* Dkt. 57-5 at 58–63.] Pursuant to two promissory notes (the "Notes"), Romans loaned Orange Pelican $2 million and $1.5 million on April 7, 2021 and May

1

25, 2021, respectively. [Dkt. 59 ¶¶ 2, 11.] The Notes had nearly identical payment terms: Orange Pelican would make quarterly interest payments of $75,000 during the year-long term of each Note and repay the principal amount of the loan on the maturity date. [*Id.* ¶¶ 6, 13.]

Orange Pelican represented to Romans that it would use the funds from both Notes to purchase "medical-grade gloves from manufacturers abroad" and that it would sell these gloves in the United States. [*Id.* ¶ 24.][1] Orange Pelican contracted to purchase gloves from three entities, but as of September 2021, due to supply-chain issues, Orange Pelican had received only some of the gloves it had ordered—189,000 boxes—and it had sold no gloves. [*Id.* ¶¶ 29, 32, 39, 44.] Despite the supply-chain problems and its inability to sell gloves, Orange Pelican made interest payments on the Notes, and in December 2021, it told Romans that "it was committed to continuing to make interest payments on the promissory notes." [*Id.* ¶¶ 45, 47–48, 54.]

The parties dispute whether Orange Pelican could have sold the gloves it had in its possession in March 2022 and, if so, how much it could have sold them for. Romans asserts that Orange Pelican could have sold the gloves, albeit at a loss, but it instead held onto the gloves in hopes of securing a higher sale price. [*Id.* ¶¶ 49–53.] Orange Pelican contends that it did attempt to sell some gloves at the prevailing prices, but it is unknown whether it could have sold all the gloves it had on hand, how

---

[1]    The parties also discuss medical-grade face masks, but Orange Pelican did not use proceeds from the Notes to finance the purchase of masks. [Dkt. 59 ¶¶ 42–43.] Therefore, statements related to masks are immaterial to Romans's motion for summary judgment.

long it would have taken it to do so, and whether those sales would have brought in enough revenue to repay Romans in full. [*Id.* ¶¶ 50–53.]

Romans fully performed his obligations under the Notes, but Orange Pelican only partially performed. [*Id.* ¶¶ 7–8, 15–16.] Between July 2021 and April 2022, Orange Pelican made four payments totaling $280,000 toward the April Note. [*Id.* ¶ 17.] Those payments left outstanding a balance of $20,000 in interest, plus the full $2 million principal. [*Id.*] Orange Pelican also paid $280,000, in five installments, toward the May Note between September 2021 and May 2022, leaving $20,000 in interest and the full $1.5 million in principal owing on the May Note. [*Id.* ¶ 18.] Orange Pelican refuses to make further payments on the Notes. [*Id.* ¶¶ 57–58.]

Romans sued, alleging that Orange Pelican breached the terms of the Notes by failing to repay the principal and interest it owed. [Dkt. 1.][2] Orange Pelican admitted its nonpayment, but it raised three affirmative defenses. [Dkt. 33.] Romans moved to strike those defenses under Federal Rule of Civil Procedure 12(f) and for judgment on the pleadings under Rule 12(c). [Dkt. 34.] The Court struck two of the defenses but did not strike Orange Pelican's frustration of purpose defense; the Court also denied the motion for judgment on the pleadings. *Romans*, 2023 WL 2933050, at *1.

The crux of the frustration of purpose defense is whether the purpose of the Notes was the success of the underlying glove-selling venture. The Court observed that Orange Pelican would "no doubt struggle to mount such a defense, but—at this early juncture—the Court is not satisfied that it is foreclosed from *trying* to do so as

---

[2]    Romans's Complaint contains two counts, one for each Note. Because the analysis is identical for the two Notes, the Court addresses them together.

a matter of law." *Id.* Accordingly, the Court allowed Orange Pelican the opportunity to develop a factual basis for this defense. Romans now moves for summary judgment, asking the Court to enter judgment for the outstanding $3,540,000 balance on the Notes. [Dkt. 56.] The Court agrees with Romans that the record is insufficient to support Orange Pelican's defense, so it grants his motion for summary judgment.

## II.    Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 802 (7th Cir. 2023). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank,* 27 F.4th 1245, 1249 (7th Cir. 2022).

## III.    Analysis

All agree that Wisconsin law applies here. *Romans*, 2023 WL 2933050, at *4 & n.5. Wisconsin courts rely on the Restatement (Second) of Contracts for the elements of frustration of purpose. *Convenience Store Leasing & Mgmt. v. Annapurna Mktg.*, 933 N.W.2d 110, 115 (Wis. Ct. App. 2019). To establish this defense, the defendant must demonstrate that "(1) the party's principal purposes in making the contract is frustrated; (2) without that party's fault; (3) by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made." *Id.*

4

(quotation omitted). Orange Pelican argues that a jury could find that the Notes'
purpose was for Orange Pelican to receive a successful financial return on the
medical-grade gloves it would purchase with the proceeds from the Notes; thus,
because Orange Pelican encountered supply-chain difficulties through no fault of its
own, the Notes' purpose was frustrated. [Dkt. 60 at 4–6.] The Court cannot agree.

Under Wisconsin law, the frustration of purpose defense "is 'given a narrow
construction' and 'applied sparingly,'" as it "renders null the explicit terms of the
contract and is counter to the strong impulse in law to enforce contracts as written."
*Convenience Store Leasing*, 933 N.W.2d at 115 (quoting 17A Am. Jur. 2d *Contracts*
§ 641 (2016)).

> Proving frustration of purpose is generally a tall order. As the
> Restatement explains: "The purpose that is frustrated must have been
> a principal purpose of that party in making the contract. It is not enough
> that he had in mind some specific object without which he would not
> have made the contract. The object must be so completely the basis of
> the contract that, as both parties understand, without it the transaction
> would make little sense."

*Id.* (alteration omitted) (quoting Restatement (Second) of Conts. § 265 cmt. a. (Am. L.
Inst. 1981)). "Frustration of purpose only excuses performance where the frustration
is 'so severe that it is not fairly to be regarded as within the risks assumed under the
contract,'" and not "merely because 'the transaction has become less profitable for the
affected party or even that he will sustain a loss.'" *Id.* (internal alteration omitted)
(quoting Restatement (Second) of Conts. § 265 cmt. a.).

Although the Court must view the record in Orange Pelican's favor at summary
judgment, *Majors*, 714 F.3d at 532, a reasonable jury would be compelled to conclude
that the purpose of the Notes was simply for Orange Pelican to borrow money from

Romans. It is undisputed that the Notes did not state that Orange Pelican would be relieved of its repayment obligations if it could not sell gloves for a profit or if manufacturing delays impacted its timeline—the Notes did not even mention gloves. [Dkt. 59 ¶¶ 19–20, 59–60.] It is also undisputed that Romans would not have agreed to loan Orange Pelican money if he had been told that Orange Pelican would not repay him unless it made a profit or if the expected transaction timeline was impacted by outside events. [*Id.* ¶¶ 22–23.] Further, it is undisputed that Orange Pelican made payments on the Notes after it experienced supply-chain problems, and it expressed its intention to fulfill its obligations despite those problems. [*Id.* ¶¶ 45, 47–48, 54.] These undisputed facts make clear that the purpose Orange Pelican argues was frustrated was not "so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense." *Convenience Store Leasing*, 933 N.W.2d at 115 (quoting Restatement (Second) of Conts. § 265 cmt. a.).

Orange Pelican unsuccessfully attempts to resist this conclusion. First, it argues that although the Notes do not mention gloves or condition Orange Pelican's repayment obligation "on the successful return of funds," the parties understood this to be the purpose of the contracts. [Dkt. 60 at 5.] It cites "Dr. Ahuja's belief in entering the contracts was that it was 'quite clear' [that the Notes] were predicated on the successful return of funds, and that the funds would be coming from th[e] specific investment" in medical-grade gloves. [*Id.*] Orange Pelican points out that "the first mention of this venture to Mr. Romans was an email from Dr. Ahuja stating 'I have been working with a group of individuals to purchase medical grade gloves from

manufacturers and then sell them … let me know if you are interested in speaking with someone from our group about this.'" [*Id.* (alteration in original).] Thus, "[t]he existence of the glove-importing venture was a *basic assumption* underlying the promissory notes. Without the investment overseas, signing the notes to provide a loan would have had no purpose, and the venture's success was the assumption these investments were made under." [*Id.*]

Orange Pelican is correct that a jury could find that both parties understood that Orange Pelican would use the proceeds of the Notes to purchase medical-grade gloves. But the purpose of a contract being that a party will undertake a venture is very different from the purpose being that the venture will turn a profit. If an external event had prevented Orange Pelican from attempting to purchase gloves from abroad, it might be able to prevail on its defense.[3] Here, however, the alleged frustration is Orange Pelican's difficulty obtaining the gloves it ordered and selling them at a profit. Romans's knowledge that Orange Pelican would undertake this venture does not help it establish that both parties understood that the venture would have to succeed for Orange Pelican to be obligated to repay Romans. Orange Pelican's belief that this was the purpose does not suffice under Wisconsin law; both parties must share this

---

[3]      *Compare* Restatement (Second) of Conts. § 265 cmt. a, illus. 4 ("A leases neon sign installations to B for three years to advertise and illuminate B's place of business. After one year, a government regulation prohibits the lighting of such signs. B refuses to make further payments of rent. B's duty to pay rent is discharged, and B is not liable to A for breach of contract."), *with id.*, illus. 6 ("A leases a gasoline station to B. A change in traffic regulations so reduces B's business that he is unable to operate the station except at a substantial loss. B refuses to make further payments of rent. If B can still operate the station, even though at such a loss, his principal purpose of operating a gasoline station is not substantially frustrated. B's duty to pay rent is not discharged, and B is liable to A for breach of contract.").

understanding. *Convenience Store Leasing*, 933 N.W.2d at 115. Here, the undisputed evidence demonstrates that Romans did not share this understanding of the purpose, as he would not have entered into an agreement with those terms. [Dkt. 59 ¶¶ 22–23.]

Second, Orange Pelican argues that the difficulty it encountered in selling the gloves frustrated the purpose of the contract. [Dkt. 60 at 6.] Orange Pelican received only a small portion of the gloves it ordered, and it received them later than expected, when the demand for and price of gloves had decreased, making it impossible for Orange Pelican to repay Romans even if it could have sold the gloves it had on hand in March 2022 at the original market price it anticipated. [*Id.* at 6–7.] "This is not the same as performing at a 'loss' or decreased profitability: Orange Pelican would be entirely unable to obtain the funds to perform"; therefore, it contends, the purpose of the contract was frustrated. [*Id.* at 7.] In support of its position, Orange Pelican cites *In re Fuzzy Thurston's Left Guard of Eau Claire, Inc.*, which reasoned that "[p]erformance may be impracticable because extreme and unreasonable difficulty, *expense*, injury, or loss to one of the parties will be involved." 6 B.R. 955, 958 (Bankr. W.D. Wis. 1980) (emphasis Orange Pelican's) (quoting draft Restatement).

*Fuzzy Thurston's* is inapposite. While it quoted Restatement language about frustration of purpose, it primarily addressed a different defense, impracticability or impossibility. *See id.* at 960 ("A reasonable extension of time within which to perform the contract is an appropriate equitable remedy if there is objective supervening impossibility."). The Court has already held that those defenses fail as a matter of

8

law here. *See Romans*, 2023 WL 2933050, at \*6–7, \*12. Orange Pelican can appeal that decision, but the Court will not revisit its conclusion.

As to frustration of purpose, subsequent caselaw clarifies that "reduced profitability, or even outright financial losses, are insufficient by themselves to prove a frustrated purpose." *Convenience Store Leasing*, 933 N.W.2d at 117 (citing Restatement (Second) of Conts. § 265 cmt. a.). Under Wisconsin law, frustration must be so severe that it is not fair to regard it as among the risks that are assumed under the contract. *Id.* at 115 (quoting Restatement (Second) of Conts. § 265 cmt. a.). The undisputed evidence that Orange Pelican made payments and affirmed its intention to make additional payments after the supply-chain problems arose prevent a reasonable jury from finding that the alleged frustration was sufficiently severe to excuse Orange Pelican's performance.

Last, Orange Pelican argues that its partial performance does not undermine its ability to prevail on its frustration of purpose defense. [Dkt. 60 at 8.] Although Orange Pelican made interest payments and "tried to follow the contract as much as [it] could," it argues that the Notes' purpose was still frustrated because selling all the gloves Orange Pelican had on hand would have been insufficient to repay Romans. [*Id.*][4] Orange Pelican may be correct that its actions did not forfeit its defense [*see id.*], but the undisputed facts establish that Orange Pelican understood that it was obligated to continue performing in face of the difficulties it encountered.

---

[4]     Orange Pelican notes that the parties did not agree to "terms for continued repayment of the loans" and argues that "any 'implicit' agreement is trumped by a failure to come to an explicit one." [Dkt. 60 at 8.] But Romans is attempting to enforce the terms of the original Notes, so the fact that the parties did not renegotiate those terms is irrelevant.

Under Wisconsin law, only a "frustrating event [that] strike[s] at the foundation of [a] contract" will justify relieving a party of its obligations, *Convenience Store Leasing*, 933 N.W.2d at 115, and Orange Pelican's continued performance after the difficulties arose establishes that the frustration did not strike at the contract's foundation.

On this record, no reasonable jury could find that Orange Pelican has satisfied the elements of frustration of purpose. Because Orange Pelican admits it did not perform its contractual obligations and its last defense fails as a matter of law, Romans is entitled to summary judgment. *See Frazier-Hill*, 75 F.4th at 802.[5]

## IV.    Conclusion

For the foregoing reasons, Romans's motion for summary judgment [Dkt. 56] is granted. Judgment shall enter in favor of Romans and against Orange Pelican in the amount of $3,540,000. Civil case terminated.

Enter: 22-cv-4169
Date:  January 18, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

[5]     Because it grants Romans's motion for summary judgment on his breach of contract claims, the Court does not reach his alternative request for restitution. [Dkt. 58 at 14–15.]

10